

**ORDERED in the Southern District of Florida on September 29, 2018.**

*Mindy A. Mora*
_____
**Mindy A. Mora, Judge**
**United States Bankruptcy Court**
_____

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

In re:                                                          Case No.: 17-19188-BKC-MAM

GREEN TERRACE CONDOMINIUM              Chapter 11
ASSOCATION, INC.,

    Debtor.
_____/

### ORDER GRANTING IN PART AND DENYING IN PART
### MOTION TO STRIKE (ECF NO. 387)

**THIS MATTER** came before the Court upon the *Motion to Strike Fowler White's Fee Application or, in the Alternative, Motion to Compel Production of Documents and for Sanctions* (ECF No. 387) (the "Motion to Strike"), filed by Nelson Mullins Broad and Cassel ("Nelson Mullins")[1] on behalf of (i) Kenneth Bailynson ("Bailynson"), (ii) WPAC RE Holdings, LLC ("WPAC"), and (iii) Boken Lending II,

---

[1] At the time of the Evidentiary Hearing, the relevant law firm was known as Broad and Cassel LLP ("Broad and Cassel"). Broad and Cassel subsequently merged with another law firm to form the firm defined herein as Nelson Mullins.

LLC ("Boken", and collectively with Bailynson and WPAC, the "Bailynson Parties"), the *Supplement to Motion to Strike* (ECF No. 392) (the "Supplement"), and the response thereto (ECF No. 432) (the "Response") filed by Fowler White Burnett, P.A. ("Fowler White"). On June 1 and 6, 2018, the Court conducted an evidentiary hearing (the "Evidentiary Hearing") on the Motion to Strike, the Supplement, and the Response and took the matter under advisement. The primary issue in dispute is whether document production made by Fowler White in the course of litigation regarding Fowler White's fee application (ECF No. 324) (the "Fee Application") was so insufficient as to trigger sanctions for non-compliance with the underlying document request, including (i) monetary sanctions for attorneys' fees and (ii) striking the Fee Application. At its core, this is a garden-variety discovery dispute between two parties with an extensive history of litigation over matters both trivial and complex.

## BACKGROUND

The above-captioned debtor ("Debtor") commenced this bankruptcy case (the "Case") a little over one year ago, on July 21, 2017 (the "Petition Date"). In the relatively short period of time since the Petition Date, the Debtor and various parties in interest generated a sizeable record of motions, responses, fee applications, and other documents. At present, the docket contains just under 500 court papers.

The Case has been highly contentious since its inception. Moreover, the source of the dispute between the Debtor (and, by extension, Fowler White) and the Bailynson Parties dates back even further, to state court litigation that preceded (and

likely precipitated) the filing of the Case.

Prepetition, the Debtor was a Florida not-for-profit corporation that operated an 84-unit residential condominium complex located at 2800 Georgia Avenue, West Palm Beach, Florida 22405 (the "Property"). The Debtor owned the common areas as well as certain individual units within the Property. Boken asserted its role as the Debtor's primary creditor early in the Case and wasted no time in advancing its interests through filing—a mere ten days after the Petition Date—a motion to compel turnover (ECF No. 11) (the "Turnover Motion") of assets from Kolman Keningsberg in its role as the state court-appointed receiver (the "Receiver").[2]

The Debtor faced numerous prepetition financial challenges, including the deterioration of certain units, inadequate financial reserves, lack of insurance, and an inability to obtain external financing.[3] Presumably, these challenges led or otherwise contributed to the appointment of the Receiver in the case styled as *Davis v. Green Terrace Condominium Association, Inc.*, Case No. 50-2015-CA-002803-XXXX-MB(AD). In any event, shortly after its appointment, the Receiver appointed a new board of directors (the "New Board"), who then voted to file a voluntary chapter 11 petition on the Debtor's behalf.[4]

The New Board was soon replaced by yet *another* board of directors in what became an apparently bitter and convoluted dispute for control over the Debtor.[5] Meanwhile, in this Case, the Receiver filed an application to retain Fowler White as

---

[2] *See* ECF No. 7 (the "Retention Application") at 3 (signature block).
[3] *See* Turnover Motion at ¶¶ 4-5; *see also* Fee Application at 3-4.
[4] *See* Turnover Motion at ¶ 11.
[5] *See id.* at ¶ 12.

the Debtor's bankruptcy counsel, which the Court granted.[6]

In the Turnover Motion, Boken asserted that its claim was secured by Debtor-owned condominium units, an undivided interest in common elements, tangible personal property of the Debtor, assessments, special assessments, and maintenance payments.[7] Bailynson served as the principal of Boken and at that time controlled, either directly or indirectly, the majority of the Debtor's condominium units and voting rights.[8] This multi-faceted level of involvement in the Debtor's affairs may explain why the Bailynson Parties collectively proceeded to vociferously object to nearly every filing in the Case advanced on the Debtor's and/or Fowler White's behalf, and the Debtor's mere presence in this Court.[9] Not to be outdone, the Debtor responded with motions, objections, and an adversary proceeding of its own.[10]

The Case continued in this hotly-contested and generally unproductive vein over the course of approximately five months, until the court-appointed chapter 11 trustee (the "Trustee")[11] finally moved the Court to dismiss the Case on the basis that the Debtor was hopelessly insolvent and incapable of an effective reorganization.[12] On February 8, 2018, the Court granted the Trustee's motion to dismiss, thereby triggering the series of events that ultimately led to this particular discovery

---

[6] *See* Retention Application and order granting same (ECF No. 35).
[7] *See* Turnover Motion at ¶ 2.
[8] *See id.* at ¶ 3.
[9] *See, e.g.*, ECF Nos. 11, 18, 19, and 57. This list represents only the documents filed by Boken within approximately the first six weeks of the Case.
[10] *See, e.g.*, ECF Nos. 23, 24, 25, 53, and 60. This list is likewise just an early sampling of the documents filed by the Debtor.
[11] The Court *sua sponte* ordered the appointment of the Trustee on October 4, 2017 after the Bailynson Parties and another interested party filed a motion seeking the appointment of a trustee. *See* ECF Nos. 71, 110, 113, & 119.
[12] *See* ECF No. 188.

4

dispute.[13] In the Dismissal Order, the Court specifically reserved jurisdiction to determine and award compensation to professionals in this Case, including Fowler White.[14] Within 24 hours of entry of the Dismissal Order, the Bailynson Parties' newly-retained replacement counsel[15] immediately noticed the deposition *duces tecum* of the Receiver, the Debtor, and Fowler White.[16]

The document request attached to the notice of deposition directed towards Fowler White (including any subsequent amendments or supplements thereto, the "Document Request") was, if nothing else, broad.[17] It sought all nature of documents and communications regarding Fowler White's representation of the Debtor and included a vastly expansive definition of the term "document".[18] Based upon the timing and nature of the document request, along with arguments made by counsel at the Evidentiary Hearing, the only reasonable inference that may be drawn from the record is that the Bailynson Parties' primary objective in issuing the Document Request was to procure detailed support for its (future) objection to Fowler White's request for fees.

In due course, Fowler White filed its Fee Application. The Bailynson Parties filed a comprehensive objection (the "Objection") (ECF No. 362) soon thereafter on March 14, 2018. The Court initially set the Fee Application for hearing on March 16, 2018, and continued the hearing to May 9, 2018 to permit the parties to submit

---

[13] *See* ECF No. 280 (the "Dismissal Order").
[14] *See id.* at page 2.
[15] *See* ECF No. 279 (Notice of Appearance).
[16] *See* ECF Nos. 282, 283, 284.
[17] *See* ECF No. 283 at Exhibit A.
[18] *See id.*

5

evidence on the matter.[19] Prior to the scheduled date, the Bailynson Parties filed the Motion to Strike. Because the Motion to Strike sought to strike the Fee Application itself – the original document for which an evidentiary hearing was already scheduled – the Court ultimately set the Motion to Strike for its own evidentiary hearing on June 1 and 6, 2018 (previously defined herein as the Evidentiary Hearing), and delayed the evidentiary hearing on the Fee Application pending resolution of the Motion to Strike.[20]

At the Evidentiary Hearing, both parties submitted literally thousands of pages of documentary evidence, including the full production of documents made by Fowler White in response to the Document Request.[21] In addition, the parties collectively presented hours of testimonial evidence over the course of two days in court, and also submitted designations of extensive testimonial evidence elicited through depositions.[22] At the conclusion of the Evidentiary Hearing, the Court took the matter under advisement, and directed the parties to submit proposed findings of fact and conclusions of law.

## ANALYSIS

At the outset, the Court makes a few observations regarding the discovery process in general and e-discovery in particular. Responding to a document request seeking electronic documents ("E-documents") is a taxing exercise. The goal in any large E-documents production is to have the margin of error be as close as humanly

---

[19] *See* ECF No. 379.
[20] The evidentiary hearing on the Fee Application has not yet been heard by the Court.
[21] *See* Fowler White Exhibit D-1.
[22] *See* Deposition Exhibits of David Toben and Eric Rosen.

possible to 0%, but likely will include some degree of incompleteness. To arrive at the lowest possible margin of error at a realistic cost to the client, junior attorneys are usually charged with culling the E-documents production to the best of their abilities and identifying more complex discovery issues. The senior supervising attorney bears the ultimate responsibility of overseeing and monitoring the work to assure compliance with the rules of discovery and compliance with the discovery request. When the system works properly, the results obtained can be exceedingly thorough, or at least acceptable. As with any onerous and complex task, however, mistakes often occur. Professional ethics require counsel on both sides to cordially resolve potential disputes. Occasionally, counsel simply cannot do so.[23]

The E-documents production (the "Document Production") made by Fowler White consisted of more than 38,000 pages of documents.[24] The Bailynson Parties, through an independent investigation, discovered that 227 emails (the "Omitted Emails") were not included in the Document Production.[25] Of those 227 emails, the Bailynson parties contend that 12 Omitted Emails were relevant to their Objection. To put the matter into perspective, the Bailynson Parties allege that Fowler White failed to initially include relevant documents representing less than 0.04% of the total Document Production. This is, beyond doubt, a miniscule percentage of error.

Fowler White ultimately acknowledged the omission and conceded that the

---

[23] It is no secret that courts at every level disfavor discovery disputes as they often provide the ultimate example of unprofessional and unproductive bickering that unnecessarily drives up the cost of litigation.
[24] *See* Fowler White Exhibit D-1.
[25] *See* Bailynson Exhibit 6.

emails should have been included within the Document Production. Fowler White attributed the error to usage of the Debtor's name ("Green Terrace") and matter number as the sole search terms initially employed in generating the Document Production.[26] Eric Rosen, the Debtor's lead counsel at Fowler White, further testified at the Evidentiary Hearing that, upon notification and discovery of the error, Fowler White undertook a more thorough analysis in order to verify that in addition to the Omitted Emails, no other documents had been erroneously excluded.[27] Fowler White appears to have taken appropriate measures to ensure that the production was complete upon notification of the error that resulted from its use of incomplete search terms.

Despite the apparent "cure" of the omission by Fowler White and despite having already filed its exceedingly thorough Objection to the Fee Application, the Bailynson Parties strenuously argue that Fowler White's failure to include the Omitted Emails constituted "spoliation" of evidence and that sanctions are warranted. Although the Court agrees that Fowler White's usage of the term "Green Terrace" and the matter number as the sole search parameters was misguided and negligent, the Court disagrees that this error resulted in spoliation of evidence.

Spoliation is "the intentional destruction, mutilation, alteration, or concealment of evidence . . . ." Black's Law Dictionary (10th ed. 2014); *In the Matter of: The Complaint of Boston Boat III, L.L.C.*, 310 F.R.D. 510, 514 (S.D. Fla. 2015) (quoting *Calixto v. Watson Bowman Acme Corp.*, No. 07–60077–CIV, 2009 WL

---

[26] *See* Transcript of June 1, 2018 Hearing (ECF No. 451) (the "June 1 Transcript") at 145:24-146:12.
[27] *See* June 1 Transcript at 149:2-150:20.

3823390, at *13 (S.D. Fla. Nov. 16, 2009)) (internal quotation marks omitted). Although the standard definition includes intent, whether intent is fundamentally required may be a matter of interpretation. *Compare* Black's Law Dictionary (10th ed. 2014); *Southeastern Mech. Servs., Inc. v. Brody*, No. 8:08–CV–1151–T–30EAJ, 2009 WL 2242395, at *2 (M.D. Fla. July 24, 2009) (spoliation is "the intentional destruction or concealment of evidence") *with Boston Boat*, 310 F.R.D. at 514 ("Courts in this circuit have been inconsistent as to whether spoliation includes intent.").

The elements of a spoliation claim include: (1) the existence of a potential civil action; (2) a legal or contractual duty to preserve evidence which is relevant to the potential civil action; (3) destruction of that evidence; (4) significant impairment in the ability to prove the lawsuit; (5) a causal relationship between the evidence destruction and the inability to prove the lawsuit; and (6) damages. *Green Leaf Nursery v. E.I. DuPont de Nemours & Co.*, 341 F.3d 1292, 1308 (11th Cir. 2003).

The Eleventh Circuit has clarified that concealment alone does not constitute spoliation. *Id.* Rather, the objectionable conduct must include either destruction of evidence or the significant and meaningful alteration of a document or instrument. *Id.* (internal citations and quotations omitted).

Application of the *Green Leaf* standard to the matter at hand clearly indicates that spoliation has not occurred. The first two elements—the existence of a potential civil action and a contractual duty to preserve evidence—are present, but on the very next element, the analysis fails. Because the Omitted Emails were, in fact, located (and ultimately produced), destruction of the Omitted Emails clearly has not

9

occurred. Moreover, the Bailynson Parties have already filed a very thorough, exceedingly comprehensive Objection to the Fee Application based on multiple grounds. Any argument that the Bailynson Parties are unable or significantly impaired in their ability to contest the Fee Application strains credulity.

Finally, the Bailynson Parties have little to show in the way of potential damages.[28] The Court will give the Objection the full weight it is due at the appropriate juncture. It is simply untenable that the Bailynson Parties' ability to object to the Application has been hindered. Tellingly, the Bailynson Parties have not found it necessary or prudent to amend or supplement the Objection in any way during the approximately six-month period since it was filed, despite the discovery of the Omitted Emails.[29]

Finally, the Court must make two important observations: (1) the Motion to Strike did not contain the "good faith" certification required by Rule 37(a)(1) of the Federal Rules of Civil Procedure (made applicable here by Rule 7037 of the Federal Rules of Bankruptcy Procedure) and Local Rule 7026-1(F), and (2) competent, professional counsel are almost always able to resolve discovery disputes consensually. While Fowler White's initial failure to disclose the Omitted Emails was improper due to its use of incomplete search terms, the path to resolve the discovery dispute chosen by the Bailynson Parties exhibited a level of sharp practice seemingly

---

[28] Although the Court acknowledges that fees were clearly expended in the preparation of the Motion to Strike, the Court questions whether it was truly necessary to file the motion. *See infra.*

[29] The Bailyson Parties' decision not to supplement the Objection after the revelation of the Omitted Emails completely undermines any potential argument that the Omitted Emails are "crucial" to the Bailynson Parties' ability to object to the Fee Application.

designed to further punish Fowler White for filing the Application, besides having had the Trustee appointed and the Case dismissed.

Therefore, although the Court finds it appropriate to sanction Fowler White for not taking sufficient care with its initial selection of search terms, which was the genesis of this discovery dispute, the Court is critical of counsel for *both* parties for failing to maintain the standard of professional competency and courtesy expected of professionals in this District that should have been employed to resolve this dispute. Moreover, the Court expects such counsel to begin exhibiting the requisite professional competency and courtesy towards one another for the duration of this Case.

## CONCLUSION

Accordingly, the Court, having considered the Motion to Strike, the Supplement, and the Response, having considered the arguments of counsel and the evidence presented at the Evidentiary Hearing, having reviewed the record and exhibits submitted by counsel, and being otherwise fully advised in the premises, hereby **ORDERS AND ADJUDGES** that:

1. The Motion to Strike is **GRANTED** in part and **DENIED** in part, as set forth herein.

2. The Court **GRANTS** the Motion to Strike to the extent that it seeks reasonable sanctions for preparation and prosecution of the Motion to Strike. Nelson Mullins is directed to file with the Court and serve on Fowler White a notice which attaches Nelson Mullins' time records associated with

the preparation and prosecution of the Motion to Strike, which shall include the amount of time and cost for such services. Within 10 days after the filing of such notice, Fowler White shall pay to Nelson Mullins the reasonable cost[30] of preparation and prosecution of the Motion to Strike, which the Court finds shall not exceed $4,000.00.

3. The Court **DENIES** the Motion to Strike to the extent that it seeks any further or other sanctions, including striking the Fee Application.

4. The Court reserves jurisdiction to determine all matters arising from or relating to the implementation of this Order.

### ###

Copies furnished to:

Gary Freedman, Esq.

*Attorney Freedman is directed to immediately serve a copy of this order upon all parties and file a certificate of service.*

---

[30] As noted in the introduction to this Order, this is a garden variety discovery dispute, despite the volume of production generated in response to the Document Request, the alleged complexity of the issues, and the duration of the Evidentiary Hearing. Drafting the Motion to Strike and presenting it should not have exceeded 10 hours of time. The Court specifically finds and concludes that a maximum rate of $400 per hour is reasonable as this rate is consistent with local hourly rates for an attorney with the level of expertise necessary to prepare and competently prosecute a similar motion. In making this determination, the Court is aware that the actual time expended likely far exceeded the amount for which the Court is issuing sanctions, and that the actual billable rate of the attorney(s) involved is likely higher than $400 per hour. Nevertheless, the Court limits the total amount to be paid to no more than $4,000.00 regardless of the time actually incurred or the hourly rate typically charged by the filing attorney. Upon filing the Motion to Strike, the parties should have been able to resolve the discovery dispute without the need for the Evidentiary Hearing.